T. B. GRANBERRY v. J. R. STOREY.

Decided April 7, May 5, 1910.

**1.—Forcible Entry and Detainer—Dispossession under Legal Process.**

A writ directing an officer to place a party in possession of specified land is not color of authority for placing him in possession of other and different land, and one in peaceable possession of such other land and dispossessed by the officer executing such writ may have it restored by action of forcible entry and detainer. Wyatt v. Monroe, 27 Texas, 269, distinguished.

**2.—Same—Identity of Premises—Question of Fact.**

In an action of forcible entry and detainer for the restitution of possession of land from which plaintiff had been evicted by an officer executing a writ of possession in favor of another, it was a question of fact to be determined by the trial court whether the land of which plaintiff had been dispossessed was within the boundaries described in the writ of possession.

**3.—Same—Boundaries.**

The boundaries of land which a writ authorized the officer to put in possession of another were described as beginning at and lying east of the northeast corner of another known tract and extending to the east line of the survey by course and distance, which distance would overrun such east line. Plaintiff was put out of possession of land occupied by him, and lying west of such beginning corner, which was fixed by bearing trees identified on the ground, and the trial court found the premises occupied by him not within the boundaries described in the writ. The evidence is considered and held to support if not to require this finding. The corner and bearing trees should be given preference over distances east and west in determining the beginning point and west boundary of the land described.

**4.—Forcible Entry and Detainer—Description—Amendment—Practice on Appeal.**

Complainant in forcible entry and detainer may amend his description of the premises (Ochoa v. Garza, 1 W. & W. C. C., sec. 939, disapproved), and objection to its sufficiency comes too late when made for the first time on motion for rehearing in the appellate court.

Appeal from the County Court of Bowie County. Tried below before Hon. Joe Hughes.

*Sam H. Smelser* and *Rodgers & Dorough,* for appellant.

*Geo. W. Johnson* and *Glass, Estes, King & Burford,* for appellee.

WILLSON, CHIEF JUSTICE.—Appellant sold to appellee a tract of 138¾ acres of land, same being a part of the J. Hopkins survey in Bowie County. As payment in part for the land appellee executed and delivered to appellant certain promissory notes, the payment of which was secured by a vendor's lien expressly retained by appellant on the land. In a suit brought by him on the notes appellant recovered a judgment against appellee foreclosing the vendor's lien on land described as a tract of 138¾ acres of the Hopkins survey, beginning at the northeast corner of the Pickens 112½-acre tract out of said Hopkins survey, and running thence north 475 varas to a corner on the south boundary line of lot No. 20 of a subdivision made of said Hopkins survey; thence east 1,662 varas to the east boundary line of said Hopkins survey; thence south with said line, etc. An order directing the sale of the land described in the judgment was issued, and at the sale subsequently made by the sheriff, as directed by the writ, appellant became the purchaser thereof. Only a part of the tract sold by appellant to appellee was included within the boundaries of the tract described in the judgment and in the order of sale issued thereon. On the part not so included appellee lived with his family. After the purchase by appellant at the sheriff's sale of the land described in the judgment, a writ describing the land as the judgment described

it, and directing the sheriff to place appellant in possession thereof, was issued. Over his protest against it, on the ground that the land he resided upon was not the land described in the writ, by virtue of the writ appellee was forcibly ejected therefrom and appellant was placed in possession thereof. Appellee then sought by an action of forcible entry and detainer to recover the possession of the land from which he had been so ejected. A trial before a justice of the peace resulted in his favor, as did a trial in the County Court, on an appeal prosecuted by appellant. In the latter court the judgment, in addition to awarding appellee relief by a restitution of the premises from which he had been ejected, awarded him damages in the sum of $116.

*After stating the case as above.*—Our statute denounces as guilty of a "forcible entry" any person who "shall make an entry into any lands, tenements or other real property, except in cases where entry is given by law, or shall make any such entry by force." Sayles' Stats., art. 2519. It defines a "forcible entry, or an entry where entry is not given by law," as "an entry without the consent of the person having the actual possession." Sayles' Stats., art. 2520. It was not disputed that at the time he was ejected therefrom appellee was in actual peaceable possession of the premises in question. It was not disputed that he was ejected therefrom without his consent and over his protest. On the contrary, it appeared without dispute that, when appellant and the officer entered upon the premises and demanded of appellee that he vacate same and deliver the possession thereof to appellant, appellee refused to do so, and that thereupon the officer "went into his (appellee's) residence and loaded his household goods and all of his personal effects into wagons and hauled them off of said premises, and unloaded them in the woods on the side of the public road, and left them there." It so appearing that appellee was in actual possession of the premises, and that he was forcibly ejected therefrom by appellant, who, the record shows, at once took and retained possession of same, we think it is clear that appellee was entitled to resort to the statutory action of forcible entry and detainer to recover possession of the premises, and, having resorted to same, to a judgment restoring him to the possession thereof. Assuming that the entry made by appellant on the premises was under "color of lawful authority," appellant insists that the action was not maintainable. The assumption made, we think, is not warranted by the record. A writ directing an officer to place a party in possession of specified land is not "color of authority" for placing the party in possession of other and different land. The writ in the officer's hands here was not like the one in the hands of the officer in Wyatt v. Monroe, 27 Texas, 269, cited by appellant as supporting his contention. There the writ covered the premises in dispute, and the contention made was, it seems, that it had been wrongfully issued. It was held, and properly so, we think, to be color of authority for the acts of the officer. On its face, evidently, it had the appearance or semblance of being a valid writ directing the officer to place the party in possession of the premises in controversy. Such was not the character of

the writ here. It did not purport on its face to direct the officer to place appellant in possession of the premises occupied by appellee, but, instead, directed him to place appellant in possession of other and different premises. And for another reason the case cited is not applicable here. There the plaintiff had acquiesced in the action of the officer dispossessing her. Here the plaintiff, over his protest, was forcibly ejected from the premises. The writ not being authority, nor color of authority, for the act of appellant and the officer, and appellee having been forcibly ejected from the premises, we think it is of no importance that appellant may have been entitled to a judgment foreclosing his lien on the land in dispute, and that it was due entirely to a mistake or oversight that he had not obtained such a judgment. The court was not called upon nor entitled to consider such matters in determining the controversy. Referring to statutes of forcible entry and detainer, the Supreme Court of the United States, in Iron Mountain & Helena R. R. Co. v. Johnson, 119 U. S., 613, 30 Law ed., 505, said: "The general purpose of these statutes is that, not regarding the actual condition of the title to the property, where any person is in the peaceable and quiet possession of it, he shall not be turned out by the strong hand, by force, by violence or by terror. The party so using force and acquiring possession may have the superior title, or may have the better right to the present possession, but the policy of the law in this class of cases is to prevent disturbances of the public peace, to forbid any person righting himself in a case of that kind by his own hand and by violence, and to require that the party who has in this manner obtained possession shall restore it to the party from whom it has been so obtained; and then, when the parties are *in statu quo,* or in the same position as they were before the use of violence, the party out of possession must resort to legal means to obtain his possession, as he should have done in the first instance. This is the philosophy which lies at the foundation of all these actions of forcible entry and detainer, which are declared not to have relation to the condition of the title or to the absolute right of possession, but to compelling the party out of possession, who desires to recover it of a person in the peaceable possession, to respect and resort to the law alone to obtain what he claims." And see Zuercher v. Startz, 115 S. W., 1176; McRae v. White, 42 S. W., 794; Merki v. Merki, 212 Ill., 121, 72 N. E., 9; Chisholm v. Weise, 5 Okla., 217, 47 Pac., 1087; Laird v. Winters, 27 Texas, 440, 80 Am. Dec., 620. The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

WILLSON, CHIEF JUSTICE.—The identity of the premises from which appellee was ejected with the premises described in the writ by virtue of which he was dispossessed was a question of fact to be determined by the trial court. He found that the writ "did not call for the land" from which appellee was ejected. We were of the opinion that the finding was not without support in testimony in the record, and therefore that it was binding upon us. If that finding was not without support in the evidence, the disposition made by us of the

appeal unquestionably, we think, was the only disposition we could have made of it. The land described in the writ was 138¾ acres of the John Hopkins survey, "beginning at the N. E. corner of the S. D. Pickens 112½-acre tract out of the Jonathan Hopkins survey, a stake from which a black-jack bears ·67½ West 6 8/10 varas, marked X, a post-oak bears N. 27 W. 15 2/10 varas, marked X; thence North 475 varas to a stake for corner on S. B. line of lot No. 20 of the division of said J. Hopkins headright survey; thence East 1,662 varas to the original E. B. line of the said J. Hopkins survey; thence South with the E. B. line of Hopkins survey to a stake from which a black-jack bears S. 65 W. 14 varas, marked X; thence West 1,662 varas to the place of beginning." The location of the N. E. corner of the Pickens 112½-acre tract was established by uncontroverted testimony, and it was shown by the same character of testimony that the land appellee was ejected from was situated west of a line running from said corner north 475 varas and thence east 1,662 varas. In other words, it was shown by uncontroverted testimony that, unless the call for the beginning corner described in the field notes in the writ should be disregarded as a mistake, the land appellee was ejected from was not the land, nor any part of it, described in the writ and the judgment by virtue of which it was issued. The contention seems to be that said beginning call was erroneous—that the true beginning corner was the northeast corner of a tract of 112¾ acres lying adjoining and west of said 112½-acre tract. Admitting that a question as to a mistake in calls in the field notes of a tract of land can be heard and determined in a forcible entry and detainer proceeding, we are of the opinion first entertained, that the testimony was sufficient to support a finding by the trial court that there was no such mistake in the field notes in question. The beginning call was not only for the northeast corner of the 112½-acre tract, but for that corner as identified by bearing trees described. A post-oak, marked as called for in the field notes, was shown to be on the ground at the point the field notes called for it to be, and it was shown that there were black-jack trees near the post-oak. It was not shown that trees answering the description of those called for in the field notes as at the beginning corner of the tract had been found at the northeast corner of the 112¾-acre tract, asserted by appellant to be the true beginning corner of the land described in the writ. We know of no rule of law that would have authorized the trial court, on the testimony in the record, to ignore a corner identified by bearing trees found on the ground and answering the description of those called for in the field notes, and to substitute for it a corner not called·for and not shown to be so identified. The mere fact that the distances called for from the southwest and northwest corners of the tract described in the writ to the east boundary line of the Hopkins survey may have been less, when applied to those points, as located on the ground, than called for in the field notes, would not be a reason for ignoring a corner or line found and identified on the ground. Calls for distance, under the circumstances shown by the record, will not control calls for corners and lines identified on the ground. Nor will calls for quantity, under such circumstances, be given effect as against calls for such corners and lines. If the field

notes, without describing witness-trees, had merely called for the beginning corner of the tract in controversy to be at the northeast corner of the Pickens 112½-acre tract, and if the testimony in the record identified the tract of 112¾ acres adjoining said 112½-acre tract on the west as the "S. D. Pickens 112¾-acre tract," as appellant assumes it did, his contention would be very much strengthened. But, as we have shown, said corner of the said S. D. Pickens 112½-acre tract was identified by bearing-trees called for in its field notes and found on the ground, and appellant's assumption that the testimony identified the tract of 113¾ acres adjoining it on the west as the "S. D. Pickens 112¾-acre tract" is not supported by the record. Said 112¾-acre tract is represented on the sketch or map, made a part of the record, as the "Miller 112¾-acre tract on which S. D. Pickens now lives." The testimony of a witness was that said 112¾-acre tract was known as "the Miller tract, on which S. D. Pickens now lives." The trial was had November 5, 1909. The judgment on which the writ was issued was rendered May 21, 1909. It was not shown that, at the time the judgment was rendered, which described the land in controversy as "beginning at the N. E. corner of the S. D. Pickens 112½-acre tract," said 112¾-acre tract was known as the S. D. Pickens 112¾-acre tract, or known otherwise than as the "Miller tract," and it was not shown that said S. D. Pickens then resided upon or was in any manner connected with the same.

We think it is clear that, in the condition of the record as stated, it should not be said that the finding of the trial court was without evidence to support it. It is not clear that, with such testimony before him, and in the absence of testimony showing the existence at the Northeast corner of the 112¾-acre tract of trees answering to the description of those called for at the beginning corner of the tract in controversy, and in the absence of testimony showing said 112¾-acre tract at the time the judgment in the foreclosure suit was rendered to have been known as the S. D. Pickens 112¾-acre tract, a contrary finding by the court would have been authorized by the evidence.

The objection to the judgment, made for the first time in the motion now being considered, that the description in appellee's complaint of the premises in controversy was insufficient, if meritorious, which we do not concede it to be, comes too late. It should have been made, in the first instance, by an exception to complaint urged in the trial court, where, had it been found to be well taken, the complaint could have been amended. Notwithstanding the ruling to the contrary by the Commission of Appeals in Ochoa v. Garza, 1 W. & W., sec. 939, we think such a defect in such a complaint can be cured by an amendment. Evetts v. Johns, 76 S. W., 778; Bibby v. Thomas, 131 Ala., 350, 31 So., 432; Schuster v. Gray, 8 Kan. App., 222, 55 Pac., 489; 9 Ency. Plead. and Prac., p. 67.